Indranil Mukerji (admitted *pro hac vice*)
Stephen A. Marshall (admitted *pro hac vice*)
Tarek J. Austin (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: + 1 (202) 662-5554
Email: imukerji@cov.com
        smarshall@cov.com
        taustin@cov.com

Lindsey Barnhart, SBN 294995
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Sq.
Palo Alto, CA 94306-2112
Telephone: 650-632-4700
Facsimile: 650-632-4800
Email: lbarnhart@cov.com

*Attorneys for Defendant/Plaintiff Netflix Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CA, INC., and AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LIMITED,<br><br>        Plaintiffs,<br><br>        v.<br><br>NETFLIX, INC.,<br><br>        Defendant. | Civil Case No.: 3:22-cv-00373-EMC<br><br>Coordinated with:<br><br>Civil Case No.: 3:21-cv-03649-EMC<br><br>**NETFLIX'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS REGARDING THE '938 PATENT**<br><br><br>Date:    January 22, 2026<br>Time:    1:30 PM<br>Dept:    Courtroom 5 – 17th Floor<br>Judge:   Honorable Edward M. Chen<br><br>Complaint Filed:    March 9, 2021<br>Trial Date:    N/A |

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 2

    A.      Relevant Prosecution History ................................................................. 3

    B.      Relevant Procedural History .................................................................. 4

III.    LEGAL STANDARDS ....................................................................................... 5

    A.      Judgment on the Pleadings..................................................................... 5

    B.      Patent Subject Matter Eligibility............................................................ 6

    C.      Determination of Patent Subject Matter Eligibility on the Pleadings..................... 6

IV.     ARGUMENT....................................................................................................... 7

    A.      *Alice* Step One: Claim 30 of the '938 Patent Is Directed to an Abstract Idea. ....... 7

        1.      Claim 30's Core Aspects Are Abstract Concepts. ..................................... 8

        2.      Claim 30 Does Not Focus on Improving Computer Technology. ............ 10

    B.      *Alice* Step Two: Claim 30 of the '938 Patent Recites No Inventive Concept. ..... 12

        1.      Claim 30's Individual Limitations Consist of Conventional Technology. 12

        2.      Claim 30's Sequencing Cannot Supply the Requisite Inventive Concept. 16

    C.      Amendment of the Complaint Would Be Futile. ................................................. 17

V.      CONCLUSION.................................................................................................... 17

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)..............................................................................................6

*Affinity Labs of Texas, LLC v. Amazon.com, Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016)........................................................................................1, 10

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
  97 F.4th 1371 (Fed. Cir. 2024) ..................................................................................... *passim*

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)...................................................................................................... *passim*

*Appistry, Inc. v. Amazon.com, Inc.*,
  No. C15-311, 2015 WL 4210890 (W.D. Wash. July 9, 2015), *aff'd*, 676 F. App'x
  1007 (Fed. Cir. 2017).......................................................................................................9, 10

*Apple, Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016).............................................................................................16

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
  569 U.S. 576 (2013)................................................................................................................6

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
  915 F.3d 743 (Fed. Cir. 2019)................................................................................................6

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)..............................................................................................6

*Beteiro, LLC v. DraftKings Inc.*,
  104 F.4th 1350 (Fed. Cir. 2024) .......................................................................8, 11, 13, 15

*Broadcom Corp. v. Netflix, Inc.*,
  677 F. Supp. 3d 1010 (N.D. Cal. 2023) ............................................................................7, 12

*BSG Tech. LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018).....................................................................................10, 11, 17

*CardioNet, LLC v. InfoBionic, Inc*,
  955 F.3d 1358 (Fed. Cir. 2020)...............................................................................................5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
  776 F.3d 1343 (Fed. Cir. 2014)..........................................................................................7, 8

*EcoFactor, Inc. v. Google LLC*,
    757 F. Supp. 3d 978 (N.D. Cal. 2024) .......................................................................7

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)..................................................................................6

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)...........................................................................11, 16

*Enovsys LLC v. Lyft, Inc.*,
    No. 23-cv-5157, 2024 WL 3049452 (N.D. Cal. June 17, 2024)................................17

*FullView, Inc. v. Polycom, Inc.*,
    485 F. Supp. 3d 1156 (N.D. Cal. 2020) .....................................................................7

*Genetic Techs. Ltd. v. Merial L.L.C.*,
    818 F.3d 1369 (Fed. Cir. 2016)..................................................................................7

*Herrera v. Zumiez, Inc.*,
    953 F.3d 1063 (9th Cir. 2020) ...................................................................................5

*Impact Engine, Inc. v. Google, LLC*,
    No. 2022-2291, 2024 WL 3287126 (Fed. Cir. July 3, 2024)................................8, 15

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) .................................................................................8

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017)........................................................................1, 8, 10

*IPLearn-Focus, LLC v. Microsoft Corp.*,
    No. 14-cv-00151, 2015 WL 4192092 (N.D. Cal. July 10, 2015) .............................13, 14, 15

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012)....................................................................................................6

*Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*,
    248 F.3d 1303 (Fed. Cir. 2001)..................................................................................4

*MyMail, Ltd. v. ooVoo, LLC*,
    934 F.3d 1373 (Fed. Cir. 2019)..............................................................................7, 12

*Netflix, Inc. v. Avago Techs. Int'l Sales Pte. Ltd.*,
    IPR2021-01298, Paper 44 (PTAB Feb. 6, 2023) ...................................................4, 5

*No Labels Party of Arizona v. Fontes*,
    142 F.4th 1226 (9th Cir. 2025) ..................................................................................9

*Realtime Adaptive Streaming L.L.C. v. Sling TV, L.L.C.*,
    113 F.4th 1348 (Fed. Cir. 2024) ..............................................................................16

*Receivership Estate of AudienceScience Inc. v. Google LLC*,
   No. 22-cv-4756, 2024 WL 1975473 (N.D. Cal. May 2, 2024)................................................17

*Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*,
   No. 2021-1906, 2022 WL 794981 (Fed. Cir. Mar. 15, 2022)..................................................12

*Simio, LLC v. FlexSim Software Prods., Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020).......................................................................................11, 17

*Skilstaf, Inc. v. CVS Caremark Corp.*,
   669 F.3d 1005 (9th Cir. 2012) ...............................................................................................9

*Trading Techs. Int'l, Inc. v. IBG LLC*,
   921 F.3d 1378 (Fed. Cir. 2019)...............................................................................................6

*Webb v. Trader Joe's Co.*,
   999 F.3d 1196 (9th Cir. 2021) ................................................................................................5

*X One, Inc. v. Uber Techs., Inc.*,
   239 F. Supp. 3d 1174 (N.D. Cal. 2017) ................................................................................16

*Yu v. Apple Inc.*,
   611 F. Supp. 3d 908 (N.D. Cal. 2020), *aff'd*, 1 F.4th 1040 (Fed. Cir. 2021) ..........................11

**Statutes**

35 U.S.C. § 101..................................................................................................... *passim*

35 U.S.C. § 112...........................................................................................................4, 12

35 U.S.C. § 311................................................................................................................4

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 22, 2026, at 1:30 PM, before the Honorable Edward M. Chen, in Courtroom 5, 17th floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant/Plaintiff Netflix, Inc. ("Netflix") will and hereby does move, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings that claim 30 of U.S. Patent No. 10,911,938 ("the '938 patent") is invalid under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Twenty-nine of the '938 patent's thirty claims have been finally adjudicated as invalid. The sole remaining claim—claim 30—is patent-ineligible under 35 U.S.C. § 101 and the *Alice* framework, as it is directed to an abstract idea and recites no inventive concept. Netflix respectfully requests that the Court evaluate this threshold legal question—which the PTAB could not consider on *inter partes* review—now, given that judgment of unpatentability could resolve the case and at a minimum would obviate the need for formal claim construction and expert discovery on that claim.

That claim 30 is directed to ineligible subject matter is apparent from its face. The claim generically recites obtaining, using, and updating user configuration information in order to control provision of media content streaming service across networked electronic devices. Unsurprisingly, the Federal Circuit has already found all core aspects of claim 30 to be patent-ineligible abstract ideas: (i) obtaining, using, and updating information, *see, e.g.*, *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024); (ii) customizing information presented to a user based on user information, *see, e.g.*, *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017); and (iii) streaming media content to portable electronic devices through customized user interfaces, *see Affinity Labs of Texas, LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016). The crux of the claim—updating service-related user information and accessing it from different settings to control provision of service—is not inventive; it is a fundamental business practice that has been implemented for decades in myriad economic contexts, including banking, hospitality, and travel. And the claimed application of this practice to media content streaming does not make it any less abstract.

Nor do the claim's limitations—individually or collectively—contain any inventive concept that could transform the claim into a patentable application of its underlying idea. The patent takes pains to assure that each of the generically recited components of the claimed system—*e.g.*, portable handheld communication devices such as smartphones, local networked devices such as personal computers, etc.— was purely conventional. Indeed, the patent deems suitable "[a]ny kind of computer system or other apparatus adapted for carrying out the [recited] methods," and requires nothing more than standard,

"general-purpose" computing technology. '938 patent at 15:21–27. The patent further conveys that configuring these well-known devices to perform the claimed functions would have amounted to nothing more than a routine undertaking: (i) it expressly recognizes that wireless networking and media content streaming were mainstream technologies, and (ii) it cursorily notes that the recited hardware may simply "comprise" the requisite "functionality" to carry out the claimed steps. Nowhere does the specification purport to identify any unconventional hardware or software. It was no surprise then that the PTAB found anticipated and/or obvious all other independent claims of the patent—which recite the same generic limitation "plurality of computing devices connected via one or more networks" and the same sequence of functional steps—and that the Federal Circuit summarily affirmed.

For these reasons, the Court should enter judgment on the pleadings that claim 30 of the '938 patent is unpatentable under Section 101. Because the subject matter ineligibility stems directly from the claim language and the specification's disclosures and nondisclosures, leave to amend is unwarranted.

## II.    BACKGROUND

CA, Inc. and Avago Technologies International Sales Pte. Limited (together, "CA") filed this suit against Netflix on March 9, 2021, alleging infringement of five patents. Dkt. 1. The United States Patent and Trademark Office ("USPTO") invalidated 71 of the 74 originally asserted claims and is currently adjudicating the validity of four claims of the '014 patent, two of which are asserted in this case. The last remaining asserted claim, claim 30 of the '938 patent ("Claim 30"), is the subject of this motion.

The '938 patent is titled "Method and System for a Networked Self-Configuring Communication Device Using User Preference Information" and is directed to obtaining, using, and updating user configuration information in order to control provision of media content streaming service across networked electronic devices. *See generally* '938 patent (Dkt. 1-5). Claim 30 reads as follows:

30. A system comprising:

a plurality of computing devices connected via one or more networks;

[1] means for receiving login information corresponding to a first user;

[2] means for identifying the first user based on the login information;

[3] means for retrieving user configuration information corresponding to the first user;

[4] means for controlling provision of a media content streaming service to a first electronic device based on the user configuration information corresponding to the first user;

[5] means for updating the user configuration information corresponding to the first user based on the provision of the media content streaming service to the first electronic device;

[6] means for receiving login information corresponding to the first user from a second electronic device;

[7] means for identifying the first user based on the login information received from the second electronic device;

[8] means for retrieving the updated user configuration information corresponding to the first user; and

[9] means for controlling provision of the media content streaming service to the second electronic device based on the updated user configuration information corresponding to the first user.

*Id.* at 20:17–44.

### A.  Relevant Prosecution History

Claim 30 combines the language of two claims from the '938 patent's original application, hereinafter referred to as "Original Claim 29" and "Original Claim 30." Original Claim 29 included "means for …" language whereas Original Claim 30 instead used the limitation "a plurality of computing devices connected via one or more networks, wherein the plurality of computing devices are configured to …" Ex. 1, U.S. Patent Application No. 16/834,723, 27–28 (Mar. 30, 2020).[1] The examiner rejected the first twenty-nine original claims as directed to patent-ineligible abstract ideas, but, without explanation, found Original Claim 30 "patent elegible" [sic]. Ex. 2, Office Action, 2–3 (Apr. 27, 2020). The examiner and the applicant then held a telephonic interview during which "options were proposed to resolve the 101 rejection." Ex. 3, Interview Summary, 2 (June 23, 2020). Three days later, the applicant submitted an amended application including what is now Claim 30 (numbered "59" in the amended application) by supplementing the language of Original Claim 29 with the limitation "a plurality of computing devices connected via one or more networks, wherein the plurality of computing devices comprise…".

---

[1] All exhibit citations refer to exhibits to the concurrently filed Declaration of Tarek J. Austin.

Ex. 4, Reply to Office Action, 11–12 (June 26, 2020). The examiner then allowed the claim without discussing subject matter eligibility. *See* Ex. 5, Notice of Allowability, 2–3 (Sept. 14, 2020).

### B.      Relevant Procedural History

The Court is familiar with the procedural posture of the case. As pertinent here, CA originally asserted all claims (1–30) of the '938 patent in the Eastern District of Texas. On August 30, 2021, the parties initially proposed constructions for various claims, including Claim 30. *See* Dkt. 97 (Joint Claim Construction and Prehearing Statement) at 5–12. The parties agreed that Claim 30's nine functional steps are "means-plus-function" limitations under 35 U.S.C. § 112, ¶ 6 and that the claimed functions were verbatim as recited in the claim, but they proposed different identifications of the corresponding structures. *Id.*[2] Regarding the term "computing device[s]" that Claim 30 shares with other claims, CA proposed that it be given its plain and ordinary meaning, *id.* at 5, and the Court agreed, *see* Dkt. 164 at 48–53.

On September 17, 2021, CA "dropped [its] assertion of Claim 30." *Netflix, Inc. v. CA, Inc.*, No. C-21-03649, Dkt. 106 at 3 (N.D. Cal. June 5, 2025). As a result, the parties did not address that claim in claim construction briefing and did not include it in the Joint Claim Construction Chart setting forth the parties' final claim construction positions, and the Court did not construe Claim 30's nine means-plus-function limitations. The parties' expert reports similarly did not address that claim.

While the case was pending, Netflix initiated IPR proceedings against all asserted patents, including the '938 patent. Because invalidity grounds in IPRs are restricted to anticipation under Section 102 and obviousness under Section 103, *see* 35 U.S.C. § 311(b), Netflix could not raise any Section 101 challenge in those proceedings. As relevant here, the PTAB found claims 1–29 of the '938 patent anticipated and/or obvious, *Netflix, Inc. v. Avago Techs. Int'l Sales Pte. Ltd.*, IPR2021-01298, Paper 44 at 87 (PTAB Feb. 6, 2023), and the Federal Circuit summarily affirmed, Fed. Cir. No. 23-1750, Dkt. 31. Claim 30 is of "similar scope" to the other independent claims 1, 23, and 27: it recites the same generic limitation "plurality of computing devices connected via one or more networks" and the same functional

---

[2] Construing a means-plus-function limitation involves two steps: (1) "determin[e] the function of the means-plus-function limitation," then (2) "determine the corresponding structure disclosed in the specification and equivalents thereof." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001).

steps, but it prefaces each step with the phrase "means for." *Netflix, Inc. v. CA, Inc.*, No. C-21-03649, Dkt. 106 at 2, 11 (N.D. Cal. June 5, 2025); *compare* '938 patent, Claim 30, *with id.*, claims 1, 23, 27; *see* IPR2021-01298, Paper 44 at 58 (recognizing that Claim 30 "recites limitations similar to those found in independent claim 1"). However, the PTAB held that the petition neglected to identify "structure" corresponding to each of Claim 30's means-plus-function limitations as required by Rule 21.104(b)(3), and, on that basis alone, rejected Netflix's challenge to that claim, *id.* at 58–60. Netflix did not appeal the PTAB's determination because, by then, CA had dropped Claim 30 from the district court action.

Following a transfer from the Eastern District of Texas to this District and a stay during pendency of the IPRs, the Court permitted CA to reassert Claim 30 in this case. *See Netflix, Inc. v. CA, Inc.*, No. C-21-03649, Dkt. 127 at 17:13–16 (N.D. Cal. July 17, 2025). The parties are now conducting supplemental fact discovery relating to Claim 30 until January 30, 2026. Dkt. 303 at 1. That discovery will be followed by claim construction, then expert discovery, and ultimately pretrial preparation. A decision from the PTAB on the potential invalidity of the two remaining asserted claims of the '014 patent—the only other claims still asserted in this case, though stayed—is expected by January 25, 2026. *Id.* The Court has not set a trial date.

## III.    LEGAL STANDARDS

### A.    Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[M]otions for judgment on the pleadings are 'functionally identical to Rule 12(b)(6) motions.'" *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (quoting *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)). The court considers the complaint, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," *id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)), including, in patent infringement cases, the asserted patent's "claim language, written description, and prosecution history," *CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1372–73 (Fed. Cir. 2020). Judgment on the pleadings is warranted if, after construing the complaint's nonconclusory factual allegations in the light most favorable to the plaintiff, the defendant is entitled to judgment as a matter of law. *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1068 (9th Cir. 2020).

**B.    Patent Subject Matter Eligibility**

35 U.S.C. § 101 states that "any new and useful process, machine, manufacture, or composition of matter, or any new or useful improvement thereof" may be eligible for a patent, but "contains an important implicit exception[:] Laws of nature, natural phenomena, and *abstract ideas are not patentable.*" *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (emphasis added).

The Supreme Court has articulated a two-step test for patentability under Section 101. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216–24 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77–80 (2012). At step one, the court "determine[s] whether the claims at issue are directed to [a] patent-ineligible concept." *Alice*, 573 U.S. at 217. The court must "evaluate the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019) (cleaned up). The "essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101, especially in the area of using generic computer and network technology." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016).

If the claims are directed to a patent-ineligible concept, the court proceeds to step two, at which it "search[es] for an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (quoting *Mayo*, 566 U.S. at 72–73) (cleaned up). To satisfy step two, the claims must "involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (cleaned up); *see also Elec. Power Grp.*, 830 F.3d at 1355 (invocation of "off-the-shelf, conventional computer, network, and display technology" insufficient).

**C.    Determination of Patent Subject Matter Eligibility on the Pleadings**

"Patent eligibility under § 101 is a question of law based on underlying facts." *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 749 (Fed. Cir. 2019). It may be decided on the pleadings "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125

(Fed. Cir. 2018); *Broadcom Corp. v. Netflix, Inc.*, 677 F. Supp. 3d 1010, 1018 (N.D. Cal. 2023) ("Challenges to patentability under Section 101 may be brought based solely on the pleadings, including on a Rule 12(c) motion.") (quoting *Open Text S.A. v. Box, Inc.*, 78 F. Supp. 3d 1043, 1045 (N.D. Cal. 2015)). Courts in this District routinely dismiss patent-ineligible claims. *See, e.g.*, *EcoFactor, Inc. v. Google LLC*, 757 F. Supp. 3d 978, 983–89 (N.D. Cal. 2024); *FullView, Inc. v. Polycom, Inc.*, 485 F. Supp. 3d 1156, 1158–67 (N.D. Cal. 2020).

"In many cases, …. evaluation of a patent claim's subject matter eligibility under § 101 can proceed … before a formal claim construction." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1374 (Fed. Cir. 2016); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) ("Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101."). "[I]f the parties raise a claim construction dispute at the Rule 12(c) stage, the district court must either adopt the non-moving party's constructions or resolve the dispute to whatever extent is needed to conduct the § 101 analysis." *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019).

## IV.    ARGUMENT

### A.    *Alice* Step One: Claim 30 of the '938 Patent Is Directed to an Abstract Idea.

Claim 30 recites a system of networked electronic devices and "means for" carrying out the following nine generalized steps: (i) receive identification information corresponding to a user; (ii) use that information to identify the user; (iii) retrieve user configuration information specific to the user; (iv) use that information to control provision of media content service to the user on a first device; (v) update the user's configuration information based on the service provided; (vi) receive identification information corresponding to the user from a second device; (vii) use that information to identify the user; (viii) retrieve the user's updated configuration information; and (ix) use the updated information to control provision of media content service to the user on the second device. In short, the claim is directed to the idea of obtaining, using, and updating user configuration information in order to control provision of media content service across networked devices. *See AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024) (*Alice* step one involves identifying "the claim's character as a whole.").

## 1. Claim 30's Core Aspects Are Abstract Concepts.

The Federal Circuit has repeatedly held that "the steps of obtaining, manipulating, and displaying data, particularly when claimed at a high level of generality, are abstract concepts." *Id.* (finding ineligible "claims … directed to converting data and using computers to collect, manipulate, and display the data"); *see Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355 (Fed. Cir. 2024) ("The claims broadly recite generic steps of a kind we have frequently held are abstract: detecting information, generating and transmitting a notification based on the information, … and processing information[.]"); *Content Extraction*, 776 F.3d at 1347 ("The concept of data collection, recognition, and storage is undisputedly well-known.").

The same is true of the step of providing customized content service based on user information. *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) ("[C]ustomizing information and presenting it to users based on particular characteristics is abstract[.]"); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) (affirming invalidation of patent "relat[ing] to customizing web page content as a function of navigation history and information known about the user," explaining that "tailoring content based on the viewer's location or address" or website "navigation data" "is a fundamental ... practice long prevalent"); *Impact Engine, Inc. v. Google, LLC*, No. 2022-2291, 2024 WL 3287126, at *6 (Fed. Cir. July 3, 2024) ("The focus of the claims is the abstract idea of processing information—turning user-provided input into user-tailored output[.]").

And the basic concept of obtaining, using, and updating user information to control provision of service across different settings—whether electronic devices or physical locations—is a fundamental business practice that has been implemented in various economic contexts for at least decades prior to the '938 patent's alleged priority date in 2007. *See Beteiro*, 104 F.4th at 1356 (finding claims "analog[ous] … to longstanding 'real-world' ('brick and mortar') activities" and noting that "similarity to 'fundamental … practices long prevalent' is yet another clue that the claims may be abstract and unpatentable").

For example, banks have long practiced the core idea underlying Claim 30: They have routinely received a customer's identification information when the customer visits a branch or accesses the bank's website on an electronic device; used that information to authenticate the customer and retrieve service-

related information specific to the customer (*e.g.*, account number and/or balance) to control provision of service (*e.g.*, process or decline to process a deposit or withdrawal, generate a statement, or charge a fee); updated the customer's service-related information (*e.g.*, account balance); and, when the customer visits another branch or accesses the bank's website on another device, used the customer's information again to control provision of service in the second setting. *See, e.g.*, Victoria Funk, *A Timeline of When Online Banking Became Available*, CGAA.COM (Jan. 26, 2025), https://www.cgaa.org/article/when-did-online-banking-start (last visited Dec. 16, 2025) (tracing online banking systems to the 1980s).

As another example of widespread commercial implementation of this idea, hotel chains have long controlled provision of service in different locations by relying on customer-specific information. They have routinely kept and recurrently updated records of customers' preferences and visit history that they use to control provision of services at different hotel locations or over the internet when the customers book online—*e.g.*, assigning a particular room type at each stay, or tracking loyalty-program-based eligibility for free or discounted service. *See, e.g.*, Ed Watkins, *The History and Evolution of Hotel Loyalty*, COSTAR.COM (Aug. 11, 2013), https://www.costar.com/article/154996602/the-history-and-evolution-of-hotel-loyalty (last visited Dec. 16, 2025) (tracing hotel customer loyalty programs to the 1980s). Similarly, airlines have long maintained traveler preference and travel history information that they use to control provision of services across their fleets, such as specific categories of in-flight meals or seats or discounted or award flights. *See, e.g.*, Eric Rosen, *40 years of miles: The history of frequent flyer programs*, THEPOINTSGUY.COM (May 20, 2021), https://thepointsguy.com/loyalty-programs/evolution-frequent-flyer-programs/ (last visited Dec. 16, 2025) (tracing modern frequent flyer loyalty programs to the 1980s). The Court can take judicial notice of the decades-old nature of this basic practice because it is a fact "not subject to reasonable dispute." *No Labels Party of Arizona v. Fontes*, 142 F.4th 1226, 1231 n.6 (9th Cir. 2025) (quoting Fed. R. Evid. 201(b)); *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012).

Thus, the crux of the invention claimed in the '938 patent is "a longstanding and intuitive practice used by many large hierarchical organizations." *Appistry, Inc. v. Amazon.com, Inc.*, No. C15-311, 2015 WL 4210890, at *2 (W.D. Wash. July 9, 2015), *aff'd*, 676 F. App'x 1007 (Fed. Cir. 2017) (granting judgment of subject matter ineligibility on the pleadings).

To the extent Claim 30 applies this practice to "a particular technological environment," *id.*, it would be media content streaming to personal electronic devices, *see* '938 patent at 20:26–27, 20:41–42. But an abstract idea limited to a specific technical field is still abstract. *See Intellectual Ventures*, 850 F.3d at 1340 ("[L]imit[ing] the invention to a technological environment for which to apply the underlying abstract concept … do[es] not make an abstract concept any less abstract under step one."); *BSG Tech. LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287, 1289 (Fed. Cir. 2018) (cautioning that "a claim is not patent eligible merely because it applies an abstract idea in a narrow way" and that "[m]erely reciting components more specific than a generic computer does not preclude a claim from being directed to an abstract idea"). As the Federal Circuit specifically held in *Affinity Labs of Texas, LLC v. Amazon.com, Inc.*, "the concept of delivering user-selected media content to portable devices is an abstract idea," and "[f]eatures such as network streaming and a customized user interface do not convert the abstract idea of delivering media content to a handheld electronic device into a concrete solution to a problem." 838 F.3d 1266, 1269, 1271 (Fed. Cir. 2016) (affirming judgment of subject matter ineligibility on the pleadings).

In (correctly) finding ineligible all but one claim of the '938 patent's original application but then allowing amended versions (including Claim 30) based on the addition of the generic language "a plurality of computing devices connected via one or more networks," the examiner overlooked settled law. *Alice*, 573 U.S. at 223–24 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention. … Such a result would make the determination of patent eligibility 'depend simply on the draftsman's art.'") (quoting *Parker v. Flook*, 437 U.S. 584, 593 (1978)).

### 2. Claim 30 Does Not Focus on Improving Computer Technology.

CA's complaint does not—because it cannot—make any allegations that could avoid the conclusion that Claim 30 is directed to an abstract idea. Its *sole* allegation relating to the '938 patent's subject matter eligibility is a bare assertion that "[t]he methods and systems described in the '938 Patent improve the functionality of a networked computer system by reducing latency in a video signal processing system." Dkt. 1 at ¶ 109. This is a transparent, yet futile, attempt to invoke the principle that "patent claims may be non-abstract at *Alice* step one if the focus of the claimed advance is on an improvement in computer technologies, rather than the mere use of computers." *AI Visualize*, 97 F.4th at 1378. It fails for multiple reasons.

*First*, the allegation is wholly conclusory and generalized. *See Yu v. Apple Inc.*, 611 F. Supp. 3d 908, 912 (N.D. Cal. 2020), *aff'd*, 1 F.4th 1040 (Fed. Cir. 2021) ("A patentee cannot avoid dismissal of ineligible claims purely on the basis of conclusory or generalized factual allegations."); *Beteiro*, 104 F.4th at 1358 ("Generalized assertions that factual considerations about the state of the art preclude a decision at the pleadings stage do not prevent a district court from granting a motion to dismiss, nor us from affirming such a dismissal.") (quoting *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 705 (Fed. Cir. 2023)) (cleaned up).

*Second*, the allegation is facially implausible and "wholly divorced" from both Claim 30 and the specification: The patent, let alone Claim 30, nowhere mentions nor defines the concept of "latency"; nor does it suggest that (or explain how) any method or system recited in the claims or specification purportedly could "reduce" latency. *AI Visualize*, 97 F.4th at 1380 ("[A]llegations … 'wholly divorced' from the claims or the specification cannot defeat a motion to dismiss.") (quoting *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019)) (cleaned up); *Beteiro*, 104 F.4th at 1357 (affirming dismissal based on subject matter ineligibility in the absence of "plausible, non-conclusory allegation" that claimed technology was unconventional); *compare with, e.g.*, *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("[O]ur conclusion that the claims are directed to an improvement of an existing technology is bolstered by the specification's teachings that the claimed invention achieves other benefits over conventional databases, such as increased flexibility, faster search times, and smaller memory requirements.").

*Third*, even assuming for the sake of argument that the system of Claim 30 might somehow reduce latency, such a benefit would not constitute the requisite "improvement in computer technology." "[B]enefits that flow from performing an abstract idea in conjunction with a well-known database structure" "are not improvements to database functionality." *BSG Tech.*, 899 F.3d at 1288; *see also Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1361 (Fed. Cir. 2020) ("[I]mproving a user's experience while using a computer application is not, without more, sufficient to render the claims directed to an improvement in computer functionality.") (quoting *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020)); *compare with, e.g.*, *Enfish*, 822 F.3d at 1338, 1339 (finding subject matter eligible claims that recited "*a specific type of data structure* designed to improve the way a

computer stores and retrieves data in memory") (emphasis added). Here, the claimed systems use conventional, generically defined components used in their ordinary capacities. *See infra* Section IV.B.

Because the crux of Claim 30 is the concept of applying a fundamental and longstanding business practice to a particular context, the claim is directed to an abstract idea and fails *Alice*'s step one.

**B.     *Alice* Step Two: Claim 30 of the '938 Patent Recites No Inventive Concept.**

Claim 30's limitations—individually and "as an ordered combination"—contain no inventive concept. *Alice*, 573 U.S. at 217.

**1.     Claim 30's Individual Limitations Consist of Conventional Technology.**

Considered individually, the claim elements consist of conventional devices and technologies performing conventional activities. *See AI Visualize*, 97 F.4th at 1379 ("[C]laim elements that are routine, conventional, or well-known" cannot "transform the nature of the claim into a patent-eligible application of the abstract idea."); *Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*, No. 2021-1906, 2022 WL 794981, at *3 (Fed. Cir. Mar. 15, 2022) (no inventive concept where "claims merely recite the use of conventional abilities" of a "well-known device").

**a)     Claim 30's structural elements are conventional and well-known.**

There is no need for the Court to engage in formal claim construction to reach this conclusion because all devices CA (the non-movant) has identified as the "structures" corresponding to the "functions" recited in Claim 30—namely, elements 102, 104a, 104b, 104c, 170-172, and 204, "as described at column 3, line 49 through column 14, line 12, and illustrated in Figures 1a, 1b, and 2," Dkt. 97 at 5–12—are conventional. Thus, for purposes of this motion only,[3] the Court can simply "adopt the non-moving party's constructions." *MyMail*, 934 F.3d at 1379; *see also Netflix*, 677 F. Supp. 3d at 1018 ("To the extent claim construction issues might arise, the Court will adopt the patentee's proposed constructions."); *supra* Section III.C. Alternatively, the Court could reach the same conclusion without adopting CA's proposed § 112, ¶ 6 "structure" identifications. As demonstrated below, the specification as a whole (i) disclaims the need for anything more than standard, general-purpose

---

[3] For the avoidance of doubt, Netflix is not waiving any claim construction position. Should this motion be denied, Netflix will present and argue its positions during the *Markman* process.

computing technology and (ii) nowhere purports to identify any unconventional hardware structure or software programming. *See IPLearn-Focus, LLC v. Microsoft Corp.*, No. 14-cv-00151, 2015 WL 4192092, at *3 (N.D. Cal. July 10, 2015) (in granting judgment on the pleadings of subject matter ineligibility, finding that "[c]laim construction is particularly unnecessary in this case because the basic character of the claimed subject matter is readily ascertainable from the face of the patent, and the parties' disputed constructions in no way affect the Court's analysis").

The patent makes clear that every device identified by CA is purely conventional. *First*, the specification's "detailed description of the invention" describes each device generically, as shown below. *See Beteiro*, 104 F.4th at 1358 ("Where, as here, the specification describes the components and features listed in the claims generically, it supports the conclusion that these components and features are conventional.") (quoting *Weisner v. Google LLC*, 51 F.4th 1073, 1083–84 (Fed. Cir. 2022)) (cleaned up).

| Element | Description of Element in Specification |
|---|---|
| 102 | "The personal electronic (PE) device 102 may comprise suitable logic, circuitry and/or code that enables performing one or more tasks requested via users of the PE device 102. For example, the PE device 102 may enable personal communication, audio/video recording and/or playing, gaming operations, and/or various other tasks. … For example, the PE device 102 may comprise a portable handheld communication device, such as a Smartphone, a cellphone, a PDA, a multimedia device[.]" ('938 patent at 3:61–66, 4:9–12) |
| 104a | "The local wireless device 104a may comprise suitable logic, circuitry and/or code that is enabled to communicate with the PE device 102 to perform a function that may be pertinent to a task requested via the PE device 102…. The local wireless device 104a … may not be limited to a specific device, and may comprise, for example, a general purpose processing device, a specialized processing device, a specialized peripheral device, or any combination of suitable hardware, and/or code, which may be enabled to perform a task requested by the PE device 102. For example, the local wireless device 104a may comprise a high-definition television (HDTV) set, a dedicated audio system, and/or a digital video player device[.]" (*id.* at 4:58–5:4) |
| 104b | "The local networked device 104b may be substantially similar to the local wireless device 104a. … For example, the local networked device 104b may comprise a personal computer (PC), a printer, scanner, and/or fax device, a dedicated memory storage device, and/or a digital video recorder device." (*id.* at 5:21–22, 5:28–31) |
| 104c | "The remote device 104c may be comprised substantially similar [sic] to the local networked device 104b and/or the local wireless device. … For example, the remote device 104c may comprise a home PC[.]" (*id.* at 5:36–38, 5:42–44) |
| 170–172 | "For example, the plurality of devices 170, …, 172, may comprise the local wireless device 104a, the local networked device 104b, and/or the remote device 104c[.]" (*id.* at 10:8–11) |
| 204 | "For example, the networked device 204 may be substantially similar to the local wireless device 104a, the local networked device 104b, and/or the remote device 104c[.]" (*id.* at 12:16–18) |

*Second*, the specification generally disclaims reliance on anything more than standard technology, instructing that "*[a]ny kind of computer system or other apparatus* adapted for carrying out the methods described herein is suited" and that "[a] typical combination of hardware and software may be *a general-purpose computer system* with a computer program that … carries out the methods described herein." *Id.* at 15:21–25 (emphasis added); *see id.* at 15:16–50. Thus, the patent not only fails to disclose any unconventional technology but also affirmatively emphasizes that the invention can be practiced with "general-purpose" hardware. *See AI Visualize*, 97 F.4th at 1380 ("[A] patentee that emphasizes a claim's use of certain technology, for example, a general-purpose computer, fails at step two when the intrinsic record establishes that the technology is conventional or well-known in the art.").

*Third*, the specification acknowledges that the recited wirelessly networked electronic devices were ubiquitous. *See, e.g.*, '938 patent at 1:67–2:1 (noting that "most people use wireless devices for various purposes, including business and personal, on a constant and daily basis"); *id.* at 2:32–33 (noting that "cellular phones have become just about an absolute necessity in today's world").

### b)   Claim 30's functional elements are conventional and routine.

The patent also indicates that configuring any of these well-known devices to perform the functions recited in Claim 30 would have amounted to nothing more than a routine undertaking.

*First*, the specification recognizes that wireless device networking was mainstream technology. *See id.* at 2:3–4 ("Numerous wireless solutions have been introduced[.]"); *id.* at 2:5–52 (discussing WPAN, WLAN, and Bluetooth as exemplary wireless device networking technologies); *id.* at 5:8–12 (stating without elaboration that "device 104a may be enabled to communicate with the PE device 102 via one or more the [sic] wireless protocols …, including, for example, WLAN … and/or WPAN … and/or Bluetooth"); *see also, e.g.*, *id.* at 4:16–29, 5:54–56, 6:22–26, 6:30–37, 6:40–43, 12:25–28 (referencing without elaboration usage of standardized wireless technologies).

*Second*, the specification recognizes that streaming media content to personal electronic devices was also mainstream technology. *See id.* at 2:39–41 (emphasizing that "[m]ost of today's cellular services include such features as text messaging, video streaming, and web browsing, for example"). Tellingly, the specification's lengthy "detailed description of the invention" describes media content streaming only in cursory fashion, noting without elaboration that generic wireless and personal electronic

("PE") devices may be used for such streaming. *See id.* at 5:32–34 ("[T]he local service resource 104a may be utilized, for example, as a media service device which may provide multimedia streaming that may be read via the PE device 102"); *id.* at 6:49–51 ("For example, the PE device 102 may enable personal communication, playing and/or recording audio/video streams, and/or may be utilized as a gaming counsel."); *see also Beteiro*, 104 F.4th at 1358 ("That only 15 lines out of a specification that runs to no less than 98 columns are addressed to what [plaintiff] now insists is unconventional technology greatly undermines the plausibility of [plaintiff's] allegations."); *Impact Engine*, 2024 WL 3287126, at *7 (affirming judgment of subject matter ineligibility on the pleadings for means-plus-function claims in the absence of "material evidence demonstrating that the [device], in [the recited] context, performs anything other than well-known, routine, and conventional computer functionality"). "The inventors do not in the specification purport to have advanced [streaming] device technology[.]" *Beteiro*, 104 F.4th at 1358.

*Third*, with respect to obtaining, using, and updating user configuration information to control streaming service, the specification notes without elaboration that the devices could "comprise" such "functionality." '938 patent at 4:30–33 ("The PE device 102 may comprise functionality that enables generation, storage, modification, and/or utilization of user configuration information during use of the PE device 102 by a user."); *see also id.* at 4:58–61 (noting without elaboration that local wireless device 104 "may comprise suitable logic, circuitry and/or code that is enabled to communicate with the PE device 102 to perform a function that may be pertinent to a task requested via the PE device 102"); *id.* at 10:4–8 (noting without elaboration that "[e]ach of the plurality of devices 170, …, 172, may comprise suitable logic, circuitry and/or code that is enabled to provide … various services and/or functionality that may be necessary to perform a requested task"); *id.* at 12:11–15 ("The networked device 204 may comprise a device that may be enabled to communicate with the PE devices … to enable performing tasks requested via the PE devices"); *Beteiro*, 104 F.4th at 1358 (specification's generic descriptions of claimed features indicative of conventionality). "Nowhere does the specification describe any difference between" (i) the programming of a streaming or networking device of the claimed system, and (ii) the programming of a conventional streaming or networking device. *Id.* Unsurprisingly, the PTAB found anticipated and/or obvious all other independent claims of the '938 patent—which recite the same generic limitation

"plurality of computing devices connected via one or more networks" and the same sequence of functional steps as Claim 30—and the Federal Circuit summarily affirmed. *See supra* Section II.B.[4]

*Fourth*, even if CA's complaint had alleged that the programming necessary to enable any recited device to perform any claimed function was unconventional (it did not, nor does the patent), that would be irrelevant because the patent (not just Claim 30, but all claims and the entire specification) discloses no programming detail whatsoever. Instead, the patent only generally states that "[a]ny kind of computer system or other apparatus *adapted for carrying out the methods described herein* is suited"; that "[a] typical combination of hardware and software may be a general-purpose computer system with a computer program *that, when being loaded and executed, controls the computer system such that it carries out the methods described herein*"; and that "[c]omputer program in the present context means any expression, in any language, code or notation, of a set of instructions intended to cause a system having an information processing capability to perform a particular function…." '938 patent at 15:21–38 (emphasis added); *see Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1242 (Fed. Cir. 2016) (at *Alice* step two, rejecting argument "that programming the software to perform various parts of the claimed systems' functionality was difficult," explaining that "[t]he difficulty of the programming details for this functionality is immaterial because these details are not recited"); *X One, Inc. v. Uber Techs., Inc.*, 239 F. Supp. 3d 1174, 1195 (N.D. Cal. 2017) ("[T]he application of a method using software does not provide an inventive concept where the 'difficulty of the programming details … are not recited[.]'") (quoting *id.*); *compare with, e.g.*, *Enfish*, 822 F.3d at 1338, 1339 (finding subject matter eligible claims that were "directed to a specific implementation of a solution to a problem in the software arts") (emphasis added).

### 2.    Claim 30's Sequencing Cannot Supply the Requisite Inventive Concept.

CA cannot argue that Claim 30's "ordered combination" of functional steps provides the requisite inventive concept. *Alice*, 573 U.S. at 217. As shown above, the basic concept of updating user information

---

[4] For the avoidance of doubt, Netflix is not equating or conflating the novelty and obviousness inquiries with the *Alice* step two conventionality inquiry. *See Realtime Adaptive Streaming L.L.C. v. Sling TV, L.L.C.*, 113 F.4th 1348, 1356 (Fed. Cir. 2024) ("[W]hether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art.") (quoting *Berkheimer*, 881 F.3d at 1369). Nevertheless, the PTAB's findings of anticipation and obviousness are consistent with Claim 30's recitation of conventional elements and failure to disclose an inventive concept.

Case No. 3:22-cv-00373-EMC                    NETFLIX'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON
Case No. 3:21-cv-03649-EMC                    THE PLEADINGS REGARDING THE '938 PATENT

16

based on provision of service in one setting in order to subsequently use that information to control provision of service in another setting is a fundamental business practice that has long been implemented in many economic contexts. *Supra* at 8–9. It is not inventive. And even assuming for the sake of argument that the concept—or the idea of applying that concept to the context of media content streaming—were inventive, such concept or idea would still be an "ineligible concept" for purposes of *Alice*'s step two under settled law. *Simio*, 983 F.3d at 1363 ("[C]ritically, a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.") (quoting *BSG Tech.*, 899 F.3d at 1290); *see also BSG Tech.*, 899 F.3d at 1290–91 ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."); *AI Visualize*, 97 F.4th at 1379 ("A claim cannot rest on the patent-ineligible concept alone to transform the invention into something significantly more than that concept.").

### C. Amendment of the Complaint Would Be Futile.

Because the subject matter ineligibility of Claim 30 stems directly from the language of the claim, the specification's disclosures that the invention is to be practiced with conventional devices used in their ordinary capacities, and the specification's failure to disclose any unconventional technology nor any software programming detail, judgment without leave to amend is warranted. *See Receivership Estate of AudienceScience Inc. v. Google LLC*, No. 22-cv-4756, 2024 WL 1975473, at *11 (N.D. Cal. May 2, 2024) (granting judgment on the pleadings without leave to amend, explaining that "because the Court's finding[] in each step of the *Alice* analysis is based on the language of the Patents-in-Suit, it finds that amendment of the Complaint would be futile"); *Enovsys LLC v. Lyft, Inc.*, No. 23-cv-5157, 2024 WL 3049452, at *12 (N.D. Cal. June 17, 2024) (dismissing complaint with prejudice, explaining that "[t]he Court reviewed the Asserted Patents when deciding this motion, and an amendment would not change the Court's *Alice* analysis").

### V. CONCLUSION

For the reasons stated above, Netflix respectfully requests that the Court grant its motion with prejudice and find that claim 30 of the '938 patent is invalid under 35 U.S.C. § 101.

Dated: December 17, 2025

Respectfully Submitted,

/s/ *Tarek J. Austin*

Indranil Mukerji (admitted *pro hac vice*)
Stephen A. Marshall (admitted *pro hac vice*)
Tarek J. Austin (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: + 1 (202) 662-5554
Email: imukerji@cov.com
          smarshall@cov.com
          taustin@cov.com

Lindsey Barnhart, SBN 294995
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Sq.
Palo Alto, CA 94306-2112
Telephone: 650-632-4700
Facsimile: 650-632-4800
Email: lbarnhart@cov.com

*Attorneys for Defendant/Plaintiff Netflix, Inc.*